UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMUEL ABDUL-JABBAR,

                        Plaintiff,

        v.

SUPERINTENDENT CALVIN E. WEST,
 Elmira Correctional Facility,
MARY J. HOPKINS, Nurse Administration,
M.D. WESLEY K. CANFIELD, and
JEFFREY FLETCHER, FSA # 2,

                        Defendants.

**DECISION
and
ORDER**

**05-CV-0373F
(consent)**

---

APPEARANCES:          SAMUEL ABDUL-JABBAR, *Pro Se*
                             85-A-5554-D-1-5
                             Gouverneur Correctional Facility
                             Box 370
                             Gouverneur, New York 13542-0370

                             ANDREW M. CUOMO
                             Attorney General, State of New York
                             Attorney for Defendants
                             DELIA DIANNA CADLE
                             Assistant Attorney General, of Counsel
                             107 Delaware Avenue
                             Fourth Floor
                             Buffalo, New York  14202

## **JURISDICTION**

On July 26, 2006, the parties to this action consented, pursuant to 28 U.S.C. § 636(c)(1), to proceed before the undersigned. The matter is presently before the court on Defendants' motion for summary judgment (Doc. No. 59), filed February 14, 2008, and Plaintiff's motion for a preliminary injunction (Doc. No. 74), filed January 5, 2009.

## BACKGROUND

Plaintiff Samuel Abdul-Jabbar ("Plaintiff"), proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on May 26, 2005, alleging violations of his Eighth Amendment right to be free from cruel and unusual punishment while incarcerated at Elmira Correctional Facility ("Elmira" or "the correctional facility"), related to an incident occurring on February 28, 2005, when Plaintiff, while pushing a mess hall garbage wagon to the correctional facility's dumpster, stepped into a pothole, fell on his back, twisting his foot and knee. Plaintiff named as Defendants Elmira Superintendent Calvin E. West ("West"), Elmira Food Service Administrator Jeffrey Fletcher ("Fletcher"), Elmira Nurse Administrator Mary J. Hopkins ("Hopkins"), and Wesley K. Canfield, M.D. ("Dr. Canfield"). Plaintiff specifically asserted three claims for relief including (1) West and Fletcher failed to repair the pothole into which Plaintiff stepped, sustaining his injuries; (2) Hopkins, as Elmira's Nurse Administrator, failed to timely arrange for adequate treatment of Plaintiff's injuries; and (3) Dr. Canfield failed to timely treat Plaintiff's injuries, including providing adequate pain medication and ordering an MRI of Plaintiff's spine.

By Order filed March 14, 2006 (Doc. No. 6) ("March 14, 2006 Order"), Honorable Michael A. Telesca dismissed the claims against West for lack of personal involvement, and against Fletcher as alleging negligence which cannot support a § 1983 claim. The claims for denial of medical care, alleged against Defendants Hopkins and Canfield (together, "Defendants'") both members of the correctional facility's medical staff, although minimally sufficient, were allowed to proceed. March 14, 2006 Order at 8.

On February 14, 2008, Defendants filed their motion for summary judgment (Doc.

No. 59) ("Defendants' motion"), and supporting papers including the Declaration of John W. Alves, M.D. in Support of Defendants' Motion for Summary Judgment (Doc. No. 60) ("Dr. Alves Declaration"), to which is attached as an exhibit copies of relevant portions of Plaintiff's Ambulatory Health Record ("AHR"),[1] Defendants' Statement of Undisputed Facts (Doc. No. 62) ("Defendants' Undisputed Facts Statement"), and a Memorandum of Law in Support of Defendants' Motion for Summary Judgment (Doc. No. 63) ("Defendants' Memorandum"). In opposition to Defendants' motion, Plaintiff filed on April 4, 2008, the Affidavit of Plaintiff in Support of Motion Opposition to Defendants Summery Judgment [*sic*] (Doc. No. 69) ("Plaintiff's Response Affidavit"), and the Affidavit In-Support of Plaintiff Statement [*sic*] (Doc. No. 70) ("Plaintiff's Statement of Facts"). In further support of summary judgment, Defendants filed on May 30, 2008, the Reply Declaration of Assistant New York Attorney General Delia D. Cadle ("Cadle") (Doc. No. 72) ("Cadle Reply Declaration").

On January 5, 2009, Plaintiff filed a motion for a preliminary injunction (Doc. No. 74) ("Plaintiff's motion"), supported by the attached Affidavit of Samuel Abdul Jabbar in Support of Motion for Preliminary Injunction ("Plaintiff's Affidavit"). On February 10, 2009, Defendants filed the Declaration of Assistant New York Attorney General Cadle in Opposition to Plaintiff's Preliminary Injunction Motion (Doc. No. 77) ("Cadle Affidavit"). In further support of his motion, Plaintiff filed on February 26, 2009, Plaintiff's Affidavit in Support of Motion to Replies and Answer to Defendants Opposition to Plaintiff Preliminary Injunction [*sic*] (Doc. No. 80) ("Plaintiff's Reply Affidavit").

---

[1] The pages of Plaintiff's AHR submitted as an exhibit to the Dr. Alves Declaration are Bates stamped. As such, references to "AHR at Bates No. __" are to the specific Bates stamped page of the AHR.

Oral argument on both motions was deemed unnecessary.

Based on the following, Defendants' motion is GRANTED; Plaintiff's motion is DENIED.

## FACTS[2]

As of February 28, 2005, Plaintiff, who is obese and who takes medication to control diabetes and high blood pressure, was incarcerated at Elmira Correctional Facility ("Elmira") where he held a prison job in food service. Just before 8:00 P.M., Plaintiff, while working at his prison job, was disposing of trash from the prison's messhall, and stepped into a hole, causing him to fall, and sustaining injuries to his right foot, leg, hip and back ("Plaintiff's injuries"). Immediately following the accident, Plaintiff, whose injuries rendered Plaintiff unable to put weight on his right leg, was transported from the scene of the accident to Elmira's infirmary where he was admitted. The next day, March 1, 2005, Plaintiff was examined by Dr. Canfield who reported Plaintiff had pain with hip movement and right knee rotation, but no fractures were obvious, and ordered X-rays and 24 hours bed rest in the infirmary, and prescribed Flexiril – a muscle relaxant. On March 2, 2005, Plaintiff was discharged from the infirmary with five days restricted activity, Flexeril prescription, and orders to refrain from work, school, and recreation, and to take meal in his cell.

Over the next three months, Plaintiff continued to be seen by Elmira's medical staff in connection with Plaintiff's complaints of foot, leg, knee, hip, and back pain, and it

---

[2] The Facts are taken from the pleadings and motion papers filed in this action.

was observed that Plaintiff walked with a limp.  Between March 2, and May 15, 2005, Plaintiff received medical attention, including medication and diagnostic tests, at Elmira's infirmary and local hospitals and clinics, *see*, *e.g.*, AHR at Bates No. 33 (X-rays taken at St. Lawrence Radiology, P.C.), at least ten times, and was continually placed on work restrictions.  Among the medications Plaintiff was prescribed for pain relief, joint stiffness and skeletal muscle relaxer were Flexeril, Motrin, Raboxin, Indocin, and Darvocet.  X-rays taken March 1, 2005 of Plaintiff's right knee and hip showed mild degenerative joint disease ("DJD") with no acute abnormalities.  X-rays taken on March 11, 2005 of Plaintiff's spine showed mild disc space narrowing at L4-5 and L5-S1, mild spondylolisthesis of the L4 and L5, secondary to degenerative changes, but no evidence of acute fracture or dislocation.

On March 28, 2005, Plaintiff filed an inmate grievance ("Plaintiff's grievance") regarding the treatment he had received for his injuries, seeking a referral to a back specialist, an order for an MRI examination, and physical therapy.  A hearing on Plaintiff's grievance was held on April 6, 2005.

On April 8, 2005, Plaintiff, complaining of muscle spasm in his back, was readmitted to Elmira's infirmary, where Plaintiff remained until April 15, 2005.  X-rays of Plaintiff's abdomen, lumbo-sacral spine and both hips, taken on April 14, 2005, showed a normal abdomen, mild to moderate DJD in both hips, and no significant findings regarding the spine.  Upon being discharged to his cell on April 15, 2005, Plaintiff was placed on restricted activity, including no work and use of a cane, until May 15, 2005.

By letter to the Director of DOCS Forensic Investigations Unit, dated April 22, 2005, Plaintiff complained that although Plaintiff continued to have much pain, swelling

and pressure in his back and lower limbs caused by the injuries sustained on February 28, 2005, Dr. Canfield had repeatedly failed to order an MRI. Plaintiff also advised that a vascular disease caused poor blood circulation in his right leg and pain, and his feet were cold and numb.

Also on April 22, 2005, Plaintiff's grievance was denied, with the explanation that additional X-rays of Plaintiff's spine and hips were taken on April 14, 2005, and that Plaintiff was scheduled for a follow-up examination on May 18, 2005. On April 25, 3005, Plaintiff appealed the grievance decision, stating he remained in "great pain," his hips, side, and lower back were swollen, painful pressure extended from his back to his knees and hips, and his legs give out when walking.

On May 13, 2005, Plaintiff was examined in Elmira's infirmary by medical staff with regard to complaints of low back and hip pain, and additional complaints that Plaintiff's foot occasionally "gave out" accompanied by a burning sensation in his legs, and an MRI was suggested. On May 15, 2005, Plaintiff's work restrictions and cane prescription were extended to August 16, 2005. On May 26, 2005, Plaintiff commenced the instant action, alleging that since the accident, he has been denied adequate treatment, including pain relief medication and a delay in ordering the MRI.

On June 8, 2005, an MRI of Plaintiff's lumbar spine, ordered by Dr. Canfield on May 15, 2005, showed a herniated disc at L5-S1 causing compression and posterior displacement of the right S1 nerve root, mild right foraminal stenosis at L4-L5 attributed to the combined effects of facet arthrosis and grade I spondylolisthesis, with the facet arthrosis right predominant, and disc bulging at L3-L4 through L5-S1, as well as T11-T12, accompanied by spondylosis at T11-T12, L4-L5 and L5-S1. On June 13, 2005,

based on the MRI findings, Dr. Canfield recommended evaluation by a spine surgeon, and, on June 23, 2005, prepared a reference for Plaintiff to an orthopedic surgeon.

On August 9, 2005, Plaintiff's appeal of his grievance was granted based on Plaintiff's vascular condition.

On August 15, 2005, Plaintiff, complaining of a cold and that his cane was damaged, was examined in Elmira's infirmary, where Plaintiff also inquired about injections for relief of spine pain. Plaintiff's cane was replaced. On September 15, 2005, Plaintiff was referred for further evaluation to an orthopedic surgeon who recommended epidural blocks for back pain relief. Plaintiff was transferred to SUNY Pain Management Clinic in Syracuse, New York, for the epidural blocks on September 22, and November 28, 2005, but both times the treatment had to be postponed because Plaintiff's blood pressure was not under control. On December 1 and 6, 2005, Plaintiff refused his blood pressure medications, requesting he be rescheduled for the SUNY Pain Medication Clinic.

On December 20, 2005, Plaintiff was taking his prescribed medications, his blood pressure was improved, and there were no contraindications to an epidural block which was rescheduled. Accordingly, on January 9, 2006, Plaintiff received his first of three recommended epidural blocks, administered at SUNY Pain Management Clinic. The epidural block greatly reduced Plaintiff's pain. Plaintiff's second epidural block, scheduled for February 27, 2006, had to be postponed because Plaintiff's blood pressure again was high. The record does not indicate whether Plaintiff ever received the other two recommended epidural block treatments.

As of April 10, 2006, Plaintiff was incarcerated at Cayuga Correctional Facility

("Cayuga"),³ where he continued to be treated for his back pain. Plaintiff received a bed board permit on April 17, 2006. On April 25, 2006, Plaintiff's cane permit was permanently renewed. On May 3, 2006, Plaintiff received medical clearance to return to his food service prison job in the messhall. On May 4, 2006, Plaintiff returned his cane to Elmira's health service.

Plaintiff was later transferred to Gouveneur Correctional Facility ("Gouvenuer") Gouveneur, New York,⁴ where the conduct of various DOCS employees give rise to the factual allegations relevant to Plaintiff's motion seeking injunctive relief.

## DISCUSSION

**1.  Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be

---

³ Although the record does not indicate precisely when Plaintiff was transferred to Cayuga, entries to Plaintiff's AHR indicate the transfer occurred between March 9, and April 10, 20060. *Compare* AHR at Bates No. 106 (March 9, 2006 entry showing Plaintiff incarcerated at Elmira), with 109 (April 10, 2006 entry showing Plaintiff incarcerated at Cayuga).

⁴ The record does not indicate when Plaintiff was transferred to Gouveneur.

drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322. Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Vague assertions supported only by self-serving statements in the nonmoving party's affidavit are insufficient to defeat a properly supported summary judgment motion. *Coniglio v. Highwood Services, Inc.*, 495 F.2d 1286, 1292 (2d Cir.), *cert. denied*, 419 U.S. 1022 (1974). "The non-moving party may not rely on conclusory assertions or unsubstantiated speculation [to defeat summary judgment]." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Rather, "the non-movant must produce <u>specific</u> <u>facts</u> indicating that a genuine factual issue exists." *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998) (underlining added). The ultimate inquiry on a summary judgment motion is whether any reasonable jury could find the plaintiff's evidence meets the requisite burden of proof. *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 122-23 (2d Cir. 2004).

Defendants are alleged to have violated Plaintiff's civil rights under 42 U.S.C. § 1983, pursuant to which an individual may seek damages against any person who, under color of state law, subjects such individual to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. 42 U.S.C. § 1983. Section 1983, however, "'is not itself a source of a substantive rights,' but merely provides 'a method for vindication of federal rights elsewhere conferred.'"

*Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140). In the instant case, the Complaint alleges Defendants violated Plaintiff's under the Eighth Amendment by failing to properly treat Plaintiff's foot, leg and back injuries sustained on February 28, 2005.

Defendants argue in support of summary judgment that Plaintiff cannot legally prevail, as required, on his Eighth Amendment failure to treat claim because ample medical evidence establishes that Plaintiff was never diagnosed with a serious medial condition capable of producing death, degeneration or extreme pain, and that Plaintiff received extensive and adequate care and treatment for his injuries while incarcerated at Elmira. Defendants' Memorandum at 5. Alternatively, Defendants assert Plaintiff's claim is barred by the Eleventh Amendment, insofar as Defendants are sued in their official capacity, as well as by the doctrine of qualified immunity. *Id*. at 15-19.

In opposition to summary judgment, Plaintiff argues that Defendants failed to provide proper treatment for his back, causing his injuries to worsen accompanied by debilitating pain from which Plaintiff continues to suffer. Plaintiff's Memorandum at 7-8. Defendants submit no further argument in support of summary judgment. Cadle Reply Declaration ¶ 4 (advising the court "Defendants have no further reply other than what has been submitted in the moving papers previously filed on February 14, 2008).

The Eighth Amendment prohibits "cruel and unusual punishments" during imprisonment. U.S. Const. 8th amend.; *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Romano v. Howarth*, 998 F.2d 101, 104 (2d cir. 1993). Not every governmental action

affecting the interests or well-being of a prisoner, however, is subject to Eighth Amendment protections. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Rather, only the unnecessary and wanton infliction of pain constitutes the cruel and unusual punishment forbidden by the Eighth Amendment. *Id*. Nevertheless, deliberate indifference to an inmate's serious medical needs is within the ambit of the Eighth Amendment protection. *Trammell v. Keane*, 338 F.3d 155, 162 (2d Cir. 2003) (observing different tests for evaluating Eighth Amendment claims for excessive force, conditions of confinement, and denial of medical care).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (bracketed text in original)). In addition to death, a serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance*, 143 F.3d at 702. The standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

> incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison officials acted with a sufficiently culpable state of mind.

*Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003) (citing *Estelle*, 429 U.S. at 104, and *Hathaway v. Coughlin*, 99 F.3d 550. 553 (2d Cir. 1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference. *Estelle*, 429 U.S. at 104;

*see Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition tending to cause acute pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of the prison dentist, precluding summary judgment in defendant's favor). Such delay in treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Further, culpable intent requires the inmate establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections*, 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)). Nevertheless, neither "inadvertent failures to provide adequate medical care" nor "negligence in diagnosing or treating a medical condition" comprise Eighth Amendment violations. *Estelle*, 429 U.S. at 105-06 (holding medical malpractice does not become a constitutional violation merely because the victim is a prisoner); *Harrison*, 219 F.3d at 139 ("We agree that the mere malpractice of medicine does not amount to an Eighth Amendment violation."). A "mere disagreement" with a physician over the appropriate course of treatment does not arise to a constitutional violation, although in certain instances a physician may evince deliberate indifference by consciously choosing "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. Regardless, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation." *Id*.

As to the objective prong, a sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration or extreme pain." *Hathaway*, 99 F.3d at 66. In the instant case, sufficient evidence in the record establishes that Plaintiff's injuries sustained on February 28, 2005, were of medical urgency that might produce not death, but degeneration or extreme pain. As such, construing the evidence, including Plaintiff's averments, in the light most favorable to the nonmovant, Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, as required on summary judgment, *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005), establishes that Plaintiff's injuries constituted a sufficiently serious condition as defined under the Eighth Amendment. The record, however, fails to establish that Defendants failed to adequately treat Plaintiff's injuries as required to establish the objective prong of an Eighth Amendment failure to treat claim. *Smith*, 316 F.3d 183-84 (2d Cir. 2003); *Chance*, 143 F.3d at 703.

Rather, the record demonstrates that immediately after the February 28, 2005 accident, Plaintiff was taken, by cart, to Elmira's infirmary where he was examined by Elmira's medical staff and admitted. The next day, Dr. Canfield examined Plaintiff and found Plaintiff with pain and decreased range of motion in his hip and right knee, but no obvious fractures, and ordered X-rays, 24 hours bed rest in the infirmary and prescribed Flexeril (muscle relaxant for muscle spasms of acute injury). Upon being discharged from the infirmary, Dr. Canfield restricted Plaintiff's activities for five days, continued Plaintiff's Flexeril prescription, and ordered Plaintiff to refrain from work, school, and recreation, and to take his meals in his cell. For more than a year following the

accident, Plaintiff was examined regularly by Elmira's medical staff in connection with complaints of pain, swelling and joint stiffness relative to his injuries, underwent diagnostic tests, was continually prescribed pain medication, and use of a cane, and his activities restricted.

Although Plaintiff made several complaints, including filing an inmate grievance, seeking to obtain an MRI, Dr. Canfield ordered an MRI on May 15, 2005, almost three months before Plaintiff's grievance was granted on appeal, establishing that the MRI was not ordered in response to Plaintiff's filing of the grievance. Nor does the record establish that either Dr. Canfield or Hopkins was even aware of such grievance.

When the June 8, 2005 MRI results showed Plaintiff with herniated and bulging discs, accompanied by nerve damage, Dr. Canfield referred Plaintiff for evaluation by an orthopedic surgeon, whom Plaintiff saw on September 15, 2005. Although the orthopedic surgeon recommended epidural blocks for back pain relief, Plaintiff was not able to receive such treatment because his blood pressure was not under control. Significantly, the record establishes Plaintiff sometimes refused to take his blood pressure medication, including on December 1 and 6, 2005, with Elmira's medical staff noting on December 6, 2005 that Plaintiff "has been refusing" his blood pressure medications. AHR at Bates No. 86 (December 1, 2005), and 99 (December 6, 2005). It was not until December 20, 2005, when Plaintiff resumed taking his blood pressure medications and brought his blood pressure under control, that Plaintiff was rescheduled for the epidural blocks treatment, *id.* at Bates No. 104, the first of which Plaintiff received on January 9, 2006, *id.* at Bates No. 105 and 107. Plaintiff was scheduled to return to the Pain Management Clinic on January 30, 2006, to receive his

second epidural block, but the second treatment was cancelled because Plaintiff's blood pressure was again high. *Id.* at Bates No. 108. Plaintiff does not contravert these facts.

Although the record does not indicate that Plaintiff received any more epidural blocks, it is also undisputed that Plaintiff continued to receive medical care for his injuries, including a bed board permit, issued on April 17, 2006, and a permanent cane permit, issued on April 25, 2006. Nevertheless, on May 3, 2006, Plaintiff was cleared to return to his food service prison job, and voluntarily surrendered use of the cane on May 4, 2006, less than two weeks after receiving a permanent prescription for the cane. AHR at Bates No. 110, 112 and 113. Of further significance is the absence in the record of any allegation by Plaintiff attributing his need for the March 3, 2009 back surgery to any failure to properly treat his injuries following the February 28, 2005.

Plaintiff's disagreement with the course of treatment chosen by Dr. Canfield does not arise to a constitutional violation, and nothing in the record establishes that Dr. Canfield or Hopkins deliberately chose "an easier and less efficacious" treatment plan. *Chance*, 143 F.3d at 703. That the delay in receiving the epidural block treatments is attributed to Plaintiff's high blood pressure, a condition caused by Plaintiff's failure to take his prescribed blood pressure medication, further underscores this determination. The record thus establishes that Plaintiff received substantial and adequate care for his injuries.

According, the record fails to establish any factual issue which, if decided in Plaintiff's favor, could establish the objective prong of Plaintiff's deliberate indifference claim with regard to the February 28, 2005 incident.

Because Plaintiff has failed to establish the objective prong for his deliberate

indifference claim as to his injuries sustained on February 28, 2005, the court need not address whether Plaintiff can establish the subjective prong, nor whether Defendants are immune from liability under either the Eleventh Amendment or the qualified immunity doctrine.

Defendants' motion for summary judgment is GRANTED.

**2.     Injunctive Relief**

Plaintiff, incarcerated at Gouveneur Correctional Facility ("Gouveneur"), moves for a preliminary injunction enjoining Defendants Dr. Canfield and Hopkins, as well as various DOCS employees at Gouveneur, from retaliating against Plaintiff for commencing the instant action by subjecting Plaintiff to discrimination, physical abuse, property damage, offensive remarks and harsh treatment. Plaintiff's Affidavit at 3. In support of the motion, Plaintiff asserts that (1) after undergoing back surgery on March 3, 2008, Gouveneur Correctional Officer ("C.O.") Brown ("Brown"), in reference to a back brace Plaintiff then wore, called Plaintiff a "ninja turtle", Plaintiff's Affidavit at 4; (2) Gouvernuer Housing Sergeant DeMarco and a hearing officer conspired to find Plaintiff guilty of a false misbehavior report charging Plaintiff with failing to keep his living area clean, *id.* at 4-5; (3) unnamed staff and corrections officers at Gouveneur failed to provide Plaintiff with the "flat steel bottom bed" for which Plaintiff had been medically approved following his back surgery; (4) unnamed prison staff members denied Plaintiff the opportunity to participate in an induction dinner for a Muslim group at Gouveneur, *id.* at 6-7; and (5) during the second week of November 2008, certain unspecified items were missing from a package Plaintiff retrieved from Gouveneur C.O. Jenkins, *id.* at 7.

In opposition to the motion, Defendants argue that Plaintiff is unable to establish the requisite clear or substantial showing of likelihood of success on the merits and irreparable harm, and that the court is without jurisdiction to grant the requested relief. Cadle Affidavit ¶ 1.

Issuance of a preliminary injunction is dependent on the movant's demonstration of (1) a reasonable likelihood of success on the merits of the underlying action to which the requested equitable relief relates, and (2) irreparable harm if the requested relief is not granted. *Porter v. Goord*, 2009 WL 1449024, *1 (W.D.N.Y. May 21, 2009) (citing *Time Warner Cable, Inc. v. DirecTV, Inc.*, 497 F.3d 144, 152-53 (2d Cir. 2007)). The requested injunctive relief, however, must relate to the allegations contained in the underlying complaint. *See Allen v. Brown*, 1998 WL 214418, *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive relief where allegations in application for such relief were unrelated to claims asserted in the complaint and, thus, plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff). Furthermore, Fed. R. Civ. P. 65(d) provides, in relevant part, "that an 'order granting an injunction . . . is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order.'"). *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999) (vacating district court's injunction barring nonparties from pursuing certain legal claims until litigation between parties was resolved).

Here, Plaintiff presents no evidence, by affidavit or otherwise, supporting a

17

finding that Plaintiff is likely to prevail on the merits of the instant action,[5] or that without the requested injunctive relief, Plaintiff will suffer irreparable harm without such relief.

With regard to Defendants Dr. Canfield and Hopkins, because Plaintiff is no longer incarcerated at Elmira, neither Dr. Canfield nor Hopkins has any contact with, or authority over, Plaintiff.  Significantly, none of the facts Plaintiff asserts in support of his motion mention either Dr. Canfield or Hopkins.  *See* Plaintiff's Affidavit at 4-8.  As such, the requested injunctive relief does not relate to the allegations contained in the underlying complaint.  *Allen*, 1998 WL 214418 at *4, and there is no basis supporting any injunctive relief as against Defendants Dr. Canfield and Hopkins.

Insofar as Plaintiff seeks to enjoin DOCS employees at Gouveneur, including C.O. Brown, Sergeant DeMarco, and C.O. Jenkins, the requested injunctive relief involving Brown and DeMarco does not relate to the allegations contained in the underlying complaint, as is required.  *Allen*, 1998 WL 214418, at *4.  Nor is either Brown, DeMarco, or Jenkins a party to the underlying action. *Id*. ("Except in limited circumstances not relevant here, a Court may not order injunctive relief as to non-parties to the action." (citing Fed. R. Civ. P. 65(d)).  Accordingly, there is no basis for granting the requested injunctive relief against either Brown, DeMarco or Jenkins.

Plaintiff's motion seeking injunctive relief is, accordingly, DENIED.

---

[5] That summary judgment is being granted on Plaintiff's underlying Eighth Amendment failure to treat claim establishes that Plaintiff will not succeed on the merits of such claim.

**CONCLUSION**

Based on the foregoing, Defendants' motion seeking summary judgment (Doc. No. 59) is GRANTED; Plaintiff's motion for a preliminary injunction (Doc. No. 74) is DENIED.  The Clerk of the Court is directed to enter judgment in accordance with this Decision and Order and to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:　　August 26, 2009
　　　　　　　Buffalo, New York


**Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App. 4(a)(1)(A) and (c).**